KATZ, Appellant,

v.

MAPLE HEIGHTS CITY SCHOOL DISTRICT
BOARD OF EDUCATION, Appellee.

[Cite as *Katz v. Maple Hts. City School Dist. Bd. of Edn.* (1993), 87 Ohio App.3d 256.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62082.

Decided April 19, 1993.

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Ronald G. Macala* and *Salvatore J. Falletta,* for appellant.

*Kelley, McCann & Livingstone, John D. Brown* and *Linda Mette,* for appellee.

PATTON, Presiding Judge.

Plaintiff-appellant Bruce Katz appeals from a judgment of the Cuyahoga County Court of Common Pleas upholding defendant-appellee Maple Heights City School District Board of Education's termination of appellant's teaching contract.

The facts underlying this appeal are not in dispute. Appellant was employed by the board for thirteen years as an elementary school music instructor. Based upon all accounts, including reports of parents and other educators, as well as periodic evaluations performed by the board, appellant was an effective and competent teacher. During the final ten years of his employment, appellant was a tenured teacher under a continuing contract of employment with the board.

On or about April 12, 1989, three days before the school district's spring break, appellant left a message on the district's absence tape informing school authorities that he would be absent due to an illness. Appellant remained absent from work on April 12, 13 and 14, 1989. Following the spring break, appellant

returned to work and signed an absence form statement which indicated that his absence was due to personal illness. In fact, it was discovered that appellant had not been ill but had accompanied his family to Florida.

On or about May 3, 1989, the board notified the appellant by letter that it intended to consider the termination of his teaching contract. The letter enumerated the following specifications of misconduct:

"1.   Being absent from your assignment for the period of April 12, 13, 14, 1989, under personal illness and, in fact, not being ill but being in Florida.

"2.   Notifying the absence tape on the evening of Tuesday, April 11, 1989, that you will be out for personal illness.

"3.   Upon returning to school, you signed the absence form statement indicating your absence was due to personal illness for the days of April 12, 13, 14, 1989, when, in fact, you were not ill but in Florida."

After receiving notice of the board's intentions, appellant elected to have a hearing before a referee pursuant to R.C. 3319.16. The referee found that appellant was an effective teacher as evidenced by reports of parents and other educators within the district. The referee also found that appellant was guilty of falsification in reporting that he was sick on April 12, 13 and 14, 1989. Further, the referee noted that the Master Agreement in effect between the school district and the system's teachers provided that the filing of a false leave statement shall result in disciplinary proceedings which may include termination of the teacher's contract. However, the referee noted that appellant had been under severe emotional pressure at the time of the falsification due to a deteriorating marriage and that appellant had felt the trip to Florida was necessary to maintain family stability. In light of appellant's record and the circumstances surrounding the falsification, the referee recommended that appellant be suspended rather than terminated.

On September 21, 1989, the board conducted a meeting in which it passed a resolution terminating the appellant's employment contract. Although the board did not specifically set forth its findings, it appears as if the board accepted the referee's findings but rejected the referee's recommendation of suspension. Following the board's meeting, appellant was sent a dismissal letter which set forth the reason for termination as falsification of sick leave in violation of R.C. 3319.141. R.C. 3319.141, which concerns sick leave, provides in relevant part: "Falsification of a statement is grounds for suspension or termination of employment under Sections 3319.081 and 3319.16 of the Revised Code."

After receiving notice of the board's decision, appellant filed an appeal in the court of common pleas pursuant to R.C. 3319.16. The Cuyahoga County Court of

Common Pleas affirmed the board's resolution terminating the appellant's employment contract.

It is from this judgment that the appellant now appeals, assigning the following as error:

"I. The trial court erred by failing to give a liberal construction to a remedial statute, Ohio Revised Code Section 3319.16.

"II. The lower court erred in overlooking appellee board's failure to articulate a reason for rejecting the referee's recommendation in this case."

Appellant argues that the common pleas court erred in applying R.C. 3319.16 when it affirmed the board's decision to terminate the appellant's teaching contract. Specifically, appellant contends that the board's action was not supported by the evidence. Additionally, appellant contends the board failed to adequately articulate its reasons for rejecting the referee's recommendation of suspension. Thus, appellant urges us to reverse the decisions of the board and the common pleas court and reinstate the recommendation of the referee. For the following reasons, appellant's arguments have merit.

In order to address appellant's arguments we must first set forth the applicable standards of review in a teacher-termination case. When a teacher contract termination proceeding is conducted by a referee pursuant to R.C. 3319.16, a board of education must accept the referee's findings of fact unless they are against the greater weight or preponderance of the evidence. *Aldridge v. Huntington School Dist. Bd. of Edn.* (1988), 38 Ohio St.3d 154, 527 N.E.2d 291, paragraph one of the syllabus. Additionally, the Supreme Court of Ohio has repeatedly held that due deference must be accorded to the findings and recommendations of the referee, because it is the referee who is best able to observe the demeanor of the witnesses and weigh their credibility. *Jones v. Franklin Cty. Sheriff* (1990), 52 Ohio St.3d 40, 43, 555 N.E.2d 940, 944, citing *Aldridge,* 38 Ohio St.3d at 157, 527 N.E.2d at 293, and *Graziano v. Amherst Exempted Village Bd. of Edn.* (1987), 32 Ohio St.3d 289, 293, 513 N.E.2d 282, 285.

Although the common pleas court's review of a board's decision is not *de novo*, R.C. 3319.16 empowers the court to weigh the evidence, hold additional hearings if necessary, and render factual determinations. *Graziano,* 32 Ohio St.3d at 293, 513 N.E.2d at 285. Moreover, a common pleas court may reverse a board's order of termination of a teacher's contract where it finds that the order is not supported by or is against the weight of the evidence. *Hale v. Lancaster Bd. of Edn.* (1968), 13 Ohio St.2d 92, 42 O.O.2d 286, 234 N.E.2d 583, paragraph one of the syllabus.

The scope of review by the court of appeals of a court of common pleas decision is limited to whether the common pleas court abused its discretion. *Graziano,* 32 Ohio St.3d at 294, 513 N.E.2d at 286. Absent an abuse of discretion, the court of appeals may not substitute its judgment for the judgment of the common pleas court. *Id.* An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

The board's September 21, 1989 resolution terminating the appellant's teaching contract provides in relevant part:

"WHEREAS, the members of the Board of Education have fully reviewed the transcript of proceedings and considered the Referee's report and recommendation, but respectfully rejects the Referee's recommendation.

"NOW, THEREFORE, BE IT RESOLVED, that the continuing teaching contract of Bruce Katz with the Board of Education be and is hereby terminated for falsification of sick leave under Ohio Revised Code 3319.141, as of September 21, 1989, on the following grounds:

"1. Being absent from his assignment for the period of April 12, 13, 14, 1989, under personal illness and, in fact, not being ill but being in Florida.

"2. Notifying the absence tape on the evening of Tuesday, April 11, 1989, that he will be out for personal illness.

"3. Upon returning to school he signed the absence form statement indicating his absence was due to personal illness for the days of April 12, 13, 14, 1989, when, in fact, he was not ill but in Florida."

We will first address appellant's argument that the board failed to adequately articulate its reasons for rejecting the referee's recommendation. In support, appellant cites the following language from *Graziano:* "[W]hen a board of education determines to reject the recommendation given by the referee, the school board should, in the spirit of due process, articulate its reasons therefor." *Id.,* 32 Ohio St.3d at 293, 513 N.E.2d at 285.

Appellant argues that the board did not sufficiently state a basis upon which to reject the referee's recommendation. We agree. In recommending that appellant be suspended rather than terminated the referee cited appellant's excellent employment record and the circumstances surrounding the falsification: *i.e.,* severe emotional pressure due to a deteriorating marriage, which led appellant to believe the trip was necessary to maintain any hope of family stability. Although the board's resolution cited R.C. 3319.141, which allows for

the suspension or termination of a teacher's employment where a sick leave statement is falsified, the board failed to sufficiently articulate its reasons for rejecting the referee's recommendation of suspension. This is especially true since R.C. 3319.141 and the contractual agreement between the parties do not require that a teacher be terminated for falsification of a sick leave statement but, rather, provide for suspension *or* termination. While the referee articulated reasons for suspending the appellant rather than terminating the appellant, the board's resolution is silent and contains no justification for imposing termination rather than suspension. Accordingly, we find that the board's resolution was deficient.

Next, we will address appellant's argument that the common pleas court misapplied R.C. 3319.16 in that the board's action was not supported by the evidence adduced at the hearing before the referee.

█ As noted previously, it is our duty to determine whether the common pleas court abused its discretion by concluding that the board's action was supported by the evidence. *Graziano,* 32 Ohio St.3d at 293 and 294, 513 N.E.2d at 285 and 286. For the following reasons, we find that the court of common pleas abused its discretion in affirming the board's decision to terminate the appellant. In reaching the above conclusion, we are cognizant of our limited scope of review and we are not engaging in an impermissible weighing of the evidence.

The transcript of the proceedings before the referee reveals that appellant was an effective and competent teacher as evidenced by the reports of parents, the reports of other educators, and periodic evaluations performed by the board. Additionally, the record fails to reveal that appellant was the subject of any prior disciplinary infractions or proceedings. Significantly, the record reflects that the appellant was under severe emotional pressure at the time of the falsification due to a deteriorating marriage and that it was appellant's belief that the trip to Florida was necessary to maintain any hope of family stability.

Moreover, the testimony of Jack Neal, the superintendent of Maple Heights City Schools, reveals that he did not even consider the appellant's employment record prior to recommending to the board that appellant be terminated. Specifically, Superintendent Neal testified as follows during the proceedings before the referee:

"Q. Well, as part of the process of making a decision to recommend his termination, did you look at his performance evaluation?

"MR. DOMIANO: Objection to the form of that question. It implies that that is required.

"THE REFEREE: I think he can answer that. I think what Mr. Schwartz wants to know, doctor, is whether or not you reviewed those teacher performance statements as part of your decision-making process to recommend termination.

"A.  I would state categorically that I attempted not to allow those to interfere with the judgment that I had to make.  Let me put that another way.  If the defendant were a very weak teacher or a very hostile teacher, that would put him or her at a very distinct advantage [*sic*] as opposed to if they had been a very cooperative teacher with the principal, volunteering to do all sorts of things.

"I think I purposely attempted to avoid letting his—the teaching act itself influence whether or not some action should occur as a result of the actions that he took.

"BY MR. SCHWARTZ:

"Q.  But in deciding if the discipline that should occur would be termination or something less, did you consider the overall quality of his teaching performance and his tenure in the system?

"MR. DOMIANO: Objection.  I think he has already answered that question.

"A.  I thought—

"THE REFEREE:  I think you can answer that yes or no.

"A.  I though[t] I answered no.  Did you think I answered no?

"THE REFEREE:  I wasn't sure.

"A.  I attempted not to have that influence the other events."

Where, as here, the relevant statutory provisions and the teaching contract itself provides for a range of possible sanctions for a particular offense, it is necessary that a superintendent take into account a teacher's employment record prior to recommending a particular sanction.  Similarly, the board itself must consider a teacher's employment record prior to imposing a particular sanction.  Moreover, the sanction imposed should be commensurate with the offense and the individual surrounding circumstances.

As indicated previously herein, the record reveals that appellant was an effective teacher, was well respected, had no prior disciplinary infractions, and was under severe emotional pressure at the time of the offense, yet the board imposed the most severe sanction when it terminated the appellant's teaching contract.  We can only conclude from the state of the record that the board failed to consider the appellant's employment history and appellant's severe emotional pressure at the time of the offense as set forth in the referee's findings.  Under these circumstances, the board failed to accord the referee's findings and recommendations the due deference required by *Jones, Aldridge* and *Graziano*.

Accordingly, the decision by the court of common pleas affirming the board's decision to terminate the appellant is reversed and the cause is remanded to the board for further action consistent with this opinion.

*Judgment reversed and cause remanded.*

JAMES D. SWEENEY and NUGENT, JJ., concur.