OPINION
{¶ 1} Plaintiff-appellant, Virginia Lynn Kitchen, appeals from the September 7, 2006 decision of the Butler County Court of Common Pleas affirming the decision of the Board of Education of the Fairfield City School District to terminate her employment contract.[1] For the *Page 2 
reasons outlined below, we affirm the decision of the common pleas court.
 {¶ 2} Appellant was the assistant superintendent of Fairfield City Schools from August 2002 until her employment contract was terminated by appellee, the Board of Education of the Fairfield City School District ("Board") on September 26, 2005. Appellant's termination stemmed from events which began on September 16, 2005. On that date, appellant attended a Fairfield High School football game where she was observed to exhibit atypical and animated behavior and had a moderate odor of alcohol on her breath. Appellant left the game after halftime, joining friends for additional drinks. On her way home, at approximately 2:00 a.m., appellant was stopped by an Ohio state trooper for erratic driving and was subsequently charged with OVI.[2] The following Monday, September 19, 2005, appellant returned to work but did not mention the incident. Fairfield School District Superintendent Dr. Robert Farrell learned of appellant's arrest and confronted her. Appellant admitted that she had been arrested, but misrepresented the circumstances of the charges against her.
 {¶ 3} On September 26, 2005, the Board initiated proceedings to terminate appellant's employment with the school district. The Board notified appellant, citing "immorality and other good and just cause" due to appellant's conduct at the Fairfield High School football game, her activities afterward, her arrest for operating a vehicle under the influence, the misconduct associated with her stop and arrest, her failure to report the arrest upon returning to work, and her misleading statements about the incident as grounds for termination.
 {¶ 4} A hearing was held before a referee on November 30, 2005. Following that hearing, the referee issued a report with findings of fact, conclusions of law, and *Page 3 
recommendations. In the findings of fact, the referee determined that, based on the observations of appellant at the game and her lack of a reasonable explanation for her unusual behavior, appellant was mildly under the influence of alcohol at the high school football game. The referee noted that administrators are considered "on-duty" when attending home football games.
 {¶ 5} The referee next referred to the video taken from the Ohio state trooper's patrol car camera, presented by the Board as evidence of the circumstances of appellant's arrest for OVI. The referee found that appellant was determined to be highly intoxicated when she was stopped for dangerous and erratic driving by the Ohio state trooper and was tested to have a blood alcohol content of 0.236; nearly three times the legal limit. See R.C. 4511.19(B).
 {¶ 6} The referee further found that appellant did not inform Superintendent Farrell of her arrest, despite the fact that they had a history of staying in touch about school issues seven days a week, if necessary. Appellant returned to work on Monday, September 19, 2005, but still did not inform Farrell. Appellant claimed that she did not inform Farrell because she had a meeting with an attorney the next day and had been advised to not say anything about her arrest until after that meeting.
 {¶ 7} When confronted by Farrell, appellant admitted that she had been arrested, but stated that she had consumed only two glasses of wine that evening and was almost home when she was stopped. The referee specifically found that these statements were not true, and that when Farrell asked appellant if there was "anything else" he needed to know, appellant declined to provide any further details. When Farrell later confronted appellant about her claim of having consumed only two glasses of wine, in light of her highly elevated blood alcohol content, appellant claimed she hadn't eaten enough that day.
 {¶ 8} The referee also found that the details of appellant's arrest received a flood of *Page 4 
media attention throughout the school district.
 {¶ 9} In her recommendation, the referee found that "the findings of fact establish that the grounds that were the factual basis of the Board's resolution were, * * * proven by the preponderance of the evidence." Despite this finding, the referee concluded that appellant's conduct amounted to a single isolated incident and did not constitute sufficient grounds for termination. The referee found that appellant's OVI conviction was a lower level offense and that her conduct did not result in harm to anyone but appellant herself. The referee further found that appellant's conduct at the football game was not serious, did not cause attention or embarrassment to the district, and would not have been the subject of comment but for appellant's later OVI arrest. Finally, the referee found that appellant's attempts to conceal and minimize the circumstances of her arrest to Superintendent Farrell were the result of legal advice and that appellant was caught off guard when confronted by Farrell. The referee therefore recommended that appellant be reinstated.
 {¶ 10} The Board rejected the referee's recommendation and terminated appellant's contract, effective September 26, 2005.
 {¶ 11} Appellant initiated an administrative appeal of the Board's decision to the Butler County Court of Common Pleas. The common pleas court took additional evidence on the matter at a hearing held June 2, 2006.[3] The common pleas court affirmed the decision of the Board and denied appellant's reinstatement by an entry filed September 7, 2006. Appellant then filed this timely appeal, raising the following assignment of error:
 {¶ 12} "THE TRIAL COURT ERRED IN AFFIRMING THE APPELLEE BOARD OF EDUCATION'S DECISION TO TERMINATE APPELLANT'S EMPLOYMENT CONTRACT."
 {¶ 13} Appellant argues that the common pleas court abused its discretion in failing to *Page 5 
give due deference to the referee's findings of fact and asks this court to reverse.
 {¶ 14} R.C. 3319.02, under the chapter governing "Schools — Superintendent; Teachers; Employees," provides that the contracts of assistant superintendents, as well as other administrators, may not be terminated except pursuant to R.C. 3319.16. That statute provides that the contract of any teacher may be terminated only for "gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause."[4] For conduct to be considered "immoral," the conduct must be hostile to the school community and not a private act which has no impact on the teacher's professional duties. Bertolini v. WhitehallCity School Dist. Bd. of Edn. (2000), 139 Ohio App.3d 595. Further, it is understood that "other good and just cause" must involve a "fairly serious matter." Hale v. Bd. of Edn., City of Lancaster (1968),13 Ohio St.2d 92, 98-99.
 {¶ 15} The decision to terminate a teacher's contract is comprised of two parts: (1) the factual basis for the allegations giving rise to the termination; and (2) the judgment as to whether the facts, as found, constitute gross inefficiency, immorality, or good cause as defined by statute. Aldridge v. Huntington School Dist. Bd. of Edn. (1988),38 Ohio St.3d 154, 157. The primary duty of the referee in a contract termination dispute under R.C. 3319.16 is to ascertain the facts, while the school board's primary duty is to interpret the significance of the facts. Bertolini at 603.
 {¶ 16} When a contract termination proceeding is conducted by a referee pursuant to R.C. 3319.16, a board of education must accept the referee's findings of fact unless they are against the greater weight, or preponderance, of the evidence. Aldridge at paragraph one of the syllabus. As to the referee's recommendation based on those findings, the school board *Page 6 
has the discretion to accept or reject the recommendation unless such acceptance or rejection is contrary to law. Id. at paragraph two of the syllabus. However, both the findings and recommendations of the referee are accorded due deference because it is the referee who is best able to observe the demeanor and credibility of the witnesses. Katz v. MapleHeights City School Dist. Bd. of Edn. (1993), 87 Ohio App.3d 256, 260.
 {¶ 17} "Although the common pleas court's review of a board's decision is not de novo, R.C. 3319.16 empowers the court to weigh the evidence, hold additional hearings if necessary, and to render factual determinations." Id. However, "a common pleas court's scope of review is more limited under R.C. Chapter 3319 appeals than in standard administrative appeals under R.C. Chapters 2505 and 2506."Sturdivant v. Toledo Bd. of Edn., 157 Ohio App.3d 401, 2004-Ohio-2878
(differentiating standards of review with regard to rights of limited-contract teachers under R.C. 3319.11). A common pleas court may reverse a board's order of term ination only where it finds that the order is not supported by or is against the weight of the evidence.Katz at 260, citing Hale. However, "absent a claim that the school board violated a statutory right or constitutional obligation, a trial court may not substitute its judgment for that of the board."Bertolini at 604. "If substantial and credible evidence is presented to support the charges of the board, and a fair administrative hearing is had, the [common pleas court] court cannot substitute its judgment for the judgment of the administrative authorities." Id., quoting Strohm v.Reynoldsburg City School Dist. Bd. of Edn. (Mar. 31, 1998), Franklin App. No. 97APE07-972.
 {¶ 18} The scope of review by an appellate court is limited to whether the common pleas court, in its review of the board's decision, abused its discretion. Katz at 261. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id., citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Absent an abuse of discretion, this court may not substitute its *Page 7 
judgment for the judgment of the common pleas court. Id.
 {¶ 19} In this case, the common pleas court found that the Board's decision was consistent with the weight of the evidence and affirmed. The Board's December 28, 2005 resolution provided that appellant's teaching contract was terminated for "immorality and/or other good and just cause" based on three identified instances of misconduct.
 {¶ 20} As to the first instance of misconduct, the Board held that "[appellant] was present on Board property at the Fairfield High School home football game on the evening of September 16, 2005 under the influence of alcohol in violation of Board Policy and Regulation GCPD-R which states in pertinent part as follows:
 {¶ 21} "Due to the nature of employment in a school system, there are certain types of conduct which will result in dismissal by the Board. These are as follows:
 {¶ 22} "* * *
 {¶ 23} "3. Having in possession or using intoxicants and/or nonprescription drugs or being under the influence of same on Board property."
 {¶ 24} The Board accepted the referee's determination that appellant was under the influence of alcohol on Board property and noted that appellant exhibited "unusual or atypical" behavior at the game and was observed to have "a moderate smell of alcohol on her breath." The Board found that such a determination demonstrated a clear violation of Board policy and rejected the referee's implication that some level of impairment was required to find a violation.[5] The Board explained that "the policy is violated whether or not a person is successful, partially or completely, in concealing the fact that he or she is under the influence of alcohol or whether or not anyone would have brought the matter to the attention *Page 8 
of a higher authority at a later time."
 {¶ 25} The Board rejected, however, the referee's implication, within the findings of fact, that appellant had consumed only one alcoholic beverage prior to attending the football game. The Board found that this finding was against the greater weight of the evidence presented to the referee, noting the following evidence in support: appellant's animated behavior and the smell of alcohol on her breath hours after she claimed to have consumed the equivalent of one shot of alcohol, appellant's attempts to conceal the fact of her consumption from other administrators by avoiding them at the game, and appellant's damaged credibility regarding her repeated untruths as to the amount of alcohol consumed in relation to her OVI charge.
 {¶ 26} It is worth noting that this is the only factual issue in dispute. In the hearing before the common pleas court, the Board presented additional evidence with regard to appellant's actions prior to the football game. Appellant had testified before the referee that she had stayed at the office until after 4:30 "checking emails" on that Friday. At the hearing, the Board presented evidence that appellant left prior to 4:30 and did not log in to her email account on that day. The Board further presented the testimony of Superintendent Farrell to refute appellant's claims that she sometimes printed out hard copies of emails to read and that it was those hard copies to which she was referring.
 {¶ 27} The common pleas court agreed with the Board. The court found a clear policy violation and rejected the referee's implication that appellant consumed only one alcoholic beverage prior to the football game. The court further rejected appellant's claims that she remained in the office until after 4:30 checking emails.
 {¶ 28} As to the second instance of misconduct, the Board found that "[appellant] operated her vehicle under the extreme influence of alcohol with a blood alcohol reading of 0.236 and in an unsafe manner by weaving in and out of marked lanes and nearly striking a *Page 9 
parked car * * * in the early morning hours of September 17, 2005."
 {¶ 29} The Board noted the "flagrant and outrageous" conduct exhibited by appellant while driving under the influence and what it determined to be a deliberate failure to stop for the pursuing police vehicles. The Board also distinguished appellant's criminal offense from those of two other district employees who had been charged with OVI. The Board explained that in both of the previous cases, the charges involved lower level offenses without the aggravating circumstances such as the failure to stop or the highly elevated blood alcohol content. The facts recited by the Board are virtually the same as those found by the referee, with the exception that the Board additionally found appellant's failure to stop for the pursuing police vehicles to be deliberate due to her continued failure to stop despite the use of lights, sirens, and loud speakers.
 {¶ 30} And as to the third and final instance of misconduct, the Board found that "[appellant] failed to disclose any of the events of the evening of September 16, 2005 and early morning hours of September 17, 2005 upon her return to work on Monday, September 19, 2005 as she should have and then was untruthful to Superintendent Farrell about the nature and extent of the incidents."
 {¶ 31} The Board noted that appellant's failure to inform Superintendent Farrell of her arrest was a failure to comply with an essential job function which required that she "[k]eep the Superintendent completely and continuously informed" regarding all "pertinent matters."
The Board specifically rejected the referee's conclusion that appellant's failure to inform Superintendent Farrell was pursuant to legal advice and explained that appellant's attempt to mislead Farrell once she was confronted demonstrated her intent to conceal or minimize her conduct. The Board again distinguished appellant's criminal offense from those of the other two district employees, noting that in both cases the employees had immediately informed their supervisors of their arrests. *Page 10 
 {¶ 32} Finding appellant's conduct to be serious, public and hostile to the community, the Board rejected the referee's recommendation and terminated appellant's contract.
 {¶ 33} While appellant argues that the common pleas court failed to give due deference to the fact determinations of the referee, it is clear that, with the exception of the issues as to the amount of alcohol that appellant consumed prior to the football game and when she began drinking, there is no significant factual disagreement in this case. Further, the Board provided detailed explanations of the evidence supporting its decision to reject the referee's finding that appellant consumed only one alcoholic beverage prior to the football game as against the weight of the evidence.
 {¶ 34} The Board ultimately disagreed with the referee as to the significance of the factual findings and rejected the referee's conclusion that they did not constitute sufficient grounds for termination. The Board, in rejecting the conclusions of the referee, found that appellant's conduct was a public, serious, and hostile matter. The Board noted the "clear" policy violation, the "outrageous" circumstances of appellant's OVI arrest, and appellant's repeated attempts to conceal or minimize the circumstances of her arrest to Superintendent Farrell. The Board specifically distinguished appellant's case from the circumstances in Bertolini v. Whitehall (2000),139 Ohio App.3d 595, in finding appellant's conduct to be public and hostile to the community. The Board referred to Superintendent Farrell's testimony regarding the public nature of the circumstances of appellant's arrest and the serious negative impact that her acts of misconduct would have on her ability to perform her many leadership responsibilities. Farrell had testified before the referee as to appellant's role in the district and her involvement in programs such as drug and alcohol education for the district. Farrell explained that appellant's misconduct would severely weaken appellant's ability to be a role model and lead in a position which requires ethics and integrity.
 {¶ 35} The Board also rejected the referee's conclusion that appellant's conduct *Page 11 
amounted to a single, isolated incident and specifically distinguished appellant's case from the circumstances in Hale v. Bd. of Edn. (1968),13 Ohio St.2d 92 (finding teacher's conduct, involving collision with unattended, parked vehicle, leaving the scene, and subsequent denial of collision to witness and police officer, to be isolated incident and not sufficient cause of termination). The Board explained that appellant engaged in multiple, separate incidents of serious misconduct which, together, warranted termination.
 {¶ 36} The common pleas court agreed with the Board, finding that the several incidents of misconduct were, "together a `very serious matter' that merits her termination." The court explained that, while the referee had determined that all of the incidents listed by the Board in its grounds for termination had been established by the evidence, the referee nevertheless recommended reinstatement. Finding the Board's rejection of that recommendation to be supported by the weight of the evidence, the common pleas court affirmed.
 {¶ 37} Unlike the cases cited by appellant, the Board in this case presented evidence of the public nature of appellant's conduct and the negative impact her misconduct would have on her ability to perform her professional duties, including those duties specifically relating to drug and alcohol education. Her conduct in attending the football game under the influence of alcohol, even mildly so, and exhibiting behavior which was noticed by other faculty, took place on Board property during a time when administrators are considered "on-duty." This clear policy violation is certainly related to her duties as an administrator and hostile to the school community, and is a proscribed behavior whether appellant was "noticeably impaired" or not. Additionally, while a single criminal conviction is generally considered a private matter, it is clear that the serious and aggravating circumstances of appellant's serious criminal offense, while reduced to a lower level OVI conviction, were a matter of public knowledge and would have a serious, negative impact on her ability to lead *Page 12 
in the many capacities required of an administrator. Finally, appellant's conduct in attempting to conceal or minimize the circumstances of her arrest to Superintendent Farrell is also clearly hostile to the school community and in direct contravention of an essential function of an assistant superintendent.
 {¶ 38} Further, appellant's conduct amounts to more than one isolated incident. Unlike the appellant in Hale, appellant engaged in separate acts of misconduct; namely, the Board policy violation, the serious criminal offense, and the attempts to conceal her offense and mislead Superintendent Farrell. These separate incidents of misconduct are together a serious matter, hostile to the community and directly impacting appellant's professional duties.
 {¶ 39} As noted by the common pleas court, the referee specifically found that each of the grounds for termination listed by the Board were established by the evidence, but then found those facts insufficient to warrant termination. "It is true that a referee's recommendations should be given considerable weight in deciding whether or not to terminate a teacher's contract. However, responsibility for making the ultimate decision belongs to the school board, and therefore not only is it their right to make an independent determination, but they are required to do so." Wells v. Madison Loc. School Dist. Bd. of Edn. (July 15, 1985), Butler App. No. CA84-10-116, p. 6, citing Florian v. Highland Loc.School Dist. Bd. of Edn. (1983), 24 Ohio App.3d 41. Where the grounds for termination are established by the evidence, neither the common pleas court nor this court on appeal may substitute its judgment for the judgment of the administrative authority. Because it is the province of the Board to determine the significance of the facts and because their determination is consistent with the weight of the evidence, we find that the common pleas court properly upheld the Board's decision to deny appellant's reinstatement. The court's decision is not unreasonable, arbitrary, or unconscionable and we find no abuse of discretion *Page 13 
in this case.
 {¶ 40} In closing, we note that appellant argues that the common pleas court abused its discretion by impermissibly considering details of her arrest record which were sealed and unavailable for consideration in this case. However, it is clear from our review that the charges against appellant which were dropped and sealed were specifically excluded from consideration in both the decision of the referee and the decision of the Board, as well as the decision of the common pleas court. Any evidence relating to the sealed charge was deleted from the record and redacted from the cruiser cam video presented at the administrative hearing.
 {¶ 41} While appellant attempts to argue that all of the details of her stop and arrest for OVI were sealed by the court's entry, we do not find that to be the case. The details of appellant's arrest and conviction for OVI, including her dangerous and erratic driving, her initial failure to stop, and the fact that a second patrol car was required to stop her vehicle, were evidenced by the remaining portions of the cruiser cam video and a matter of public record. Appellant has presented no evidence to suggest that her OVI conviction and arrest record have been sealed along with the charges which were dropped.
 {¶ 42} Because we find that the common pleas court did not abuse its discretion in finding that the Board's decision was supported by and consistent with the weight of the evidence, appellant's sole assignment of error is overruled.
 {¶ 43} Judgment affirmed.
YOUNG, P.J., and BRESSLER, J., concur.
[1] Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.
[2] Appellant later entered a plea of no contest to a lesser degree OVI offense; other charges were dropped and sealed.
[3] See R.C. 3319.16.
[4] R.C. 3319.09 defines "Teacher," as used in R.C. 3319.16, to include "all persons licensed to teach and who are employed in the public schools of this state as instructors, principals, supervisors, superintendents, * * *."
[5] The referee, in both the findings of fact and recommendations, made the contradictory findings that, while appellant was under the mild influence of alcohol, there was not sufficient evidence to conclude she was impaired, finding that her behavior did not draw attention or cause embarrassment to the district. *Page 1