OPINION
{¶ 1} Christina Hamilton appeals from the judgment of the Champaign County Common Pleas Court which affirmed the decision of the Governing Board of the Madison-Champaign Educational Service Center to terminate her as a teacher. *Page 2 
 {¶ 2} In October of 2002, a vacancy occurred in the position of multi-disabled/intervention specialist (hereinafter referred to as "MD" or "MD/IS") at West Liberty-Salem School District. This position is staffed by the Governing Board. Teaching an MD class requires special licensure, skills and training beyond that of a regular classroom teacher. Multi-disabled students have multiple disability conditions and are very difficult to teach, requiring unique and varied strategies. Judy Saylor, the Superintendent of the Governing Board, was aware that Hamilton had worked with the Governing Board in other nonteaching capacities, was available and had prior experience with the MRDD population. Due to the exigent circumstances (the school year had already begun) Saylor sought Hamilton out for appointment to the vacant MD position. Hamilton was employed as a teacher by the Governing Board in a position of classroom teacher/intervention specialist for multi-disabled students. Although an employee of the Governing Board, Hamilton was assigned to work in the West Liberty-Salem Local School District buildings.
 {¶ 3} Hamilton possessed no valid teaching license because she had allowed all of her teaching certificates to lapse. During the initial 60-day employment period, Hamilton applied for and received a one-year substitute license. This license allowed her to teach for the year and work toward full credentials as an MD/IS teacher. Hamilton taught for the 2002-2003 school year pursuant to this one-year substitute license. In response to a January 2003 survey from the Superintendent, Hamilton indicated that she wished to return to her MD/IS position for the 2003-2004 school year. Hamilton further acknowledged, in writing, that her license was expiring at the end of the current school year and that she planned to apply for a new license. It was necessary for *Page 3 
Hamilton to secure a license in the area to which she was assigned — MD/IS — in order to continue employment. R.C. 3319.36(A)(2). Hamilton was able to secure a professional license in the area of health education ("Health Education License") due to her prior certification as a teacher in that area (this certificate had previously lapsed). The Health Education License allowed the Governing Board to seek special consideration for a temporary license in the area to which Hamilton was assigned — MD/IS.
 {¶ 4} In July 2003, the Superintendent submitted a renewal verification form for the Health Education License. The Health Education License was issued on August 8, 2003, with a retroactive effective date of July 1, 2003. A second step was undertaken whereby the Superintendent could apply for a one-year temporary license in the area of MD/IS on behalf of Hamilton.
 {¶ 5} In September 2003, an application for a temporary license for intervention specialist was submitted to the Ohio Department of Education by the Board. A full-time temporary intervention specialist license may be issued to the holder of a currently-valid license who has completed six semester hours in an approved program for the intervention specialist license. Upon completion of the six semester-hour requirement, the temporary license may be renewed no more than four times. See Ohio Admin. Code § 3301-23-44(C)(1). On a one-time basis, the coursework requirement may be waived. The Superintendent requested a waiver of this requirement in the September 2003 application. A one-year temporary license for intervention specialist was issued on October 9, 2003, with an effective period from July 1, 2003 to June 30, 2004. The license received by Hamilton states on its face that it may be renewedonly upon *Page 4 
completion of six semester hours in an approved program.
 {¶ 6} With the Temporary Intervention Specialist License, Hamilton taught the MD class at West Liberty-Salem for the 2003-2004 school year. In order to continue teaching in this position during the 2004-2005 school year, it was necessary for Hamilton to complete six additional semester hours of coursework in order to renew the temporary certification. Hamilton was provided an updated job description in January 2004 which stated that a current teaching license for MD was necessary for the position. She signed the job description accepting responsibility. In November 2003, Hamilton was advised in writing by Superintendent Saylor that her Temporary Intervention Specialist License was expiring and that she would need to complete the requisite coursework by the end of the school year. The Temporary Intervention Specialist License that Hamilton received, which permitted her to teach in 2003-2004, stated on its face, "Renewal upon completion of 6 semester hours in the Approved Program." Governing Board Exhibit 12, (Appendix A-40); Transcript, pp. 35-37.
 {¶ 7} On August 5, 2004, Superintendent Saylor called Hamilton inquiring about her progress in obtaining the necessary license. Hamilton responded that the summer had gotten away from her and that she had not completed the coursework. Hamilton maintained she was in the process of communicating with Ashland University to take care of her necessary coursework before the school year started. After this conversation, Hamilton sent an e-mail to the Superintendent listing workshops which she believed would cover her necessary coursework. Hamilton then informed Saylor that Ashland College would not place her into an approved program. When it became clear that Hamilton was not able to secure a temporary license to teach MD students at West *Page 5 
Liberty-Salem for the 2004-2005 school year, Saylor initiated proceedings to terminate her contract of employment with the Board.
 {¶ 8} On August 23, 2004, the Board proceeded to consider the termination of Hamilton's employment as a teacher pursuant to R.C. 3319.16. The grounds for initiation of termination proceedings were provided to Hamilton in a letter dated August 25, 2004. She was informed in the letter:
 {¶ 9} "1. You do not possess and have failed to maintain the proper certification or credentials necessary to teach in your position with the Madison-Champaign Educational Service Center.
 {¶ 10} "2. You have repeatedly failed to undertake the necessary coursework to secure regular certification that would allow you to teach in your assigned area for the Madison-Champaign Educational Service Center.
 {¶ 11} "3. Ohio law prohibits the Governing Board from paying you for services as a teacher without proper certification." (Governing Board Exhibit 22.)
 {¶ 12} Hamilton requested a hearing before a referee and after an evidentiary hearing, the referee recommended that Hamilton continue her employment with the Board. The referee found that there were no prerequisites or conditions to be met for Hamilton receiving a teaching contract for the 2004-2005 school year. The referee found that Hamilton was confused and misunderstood exactly what the Service Center expected of her with regard to her continuing education requirements. The referee found that there was "no evidence produced showing that the continuing education requirements were ever discussed with Ms. Hamilton." The referee noted that Saylor admitted she had the authority to place a teacher in a classroom for up to two years *Page 6 
while the teacher is working towards a license but she chose not to do that with Hamilton because she had not pursued any further training to enhance her teaching skills. The referee noted that at the time of the hearing, Ms. Hamilton testified she was currently registered to take six hours of courses at Urbana University. Finally, the referee concluded there was no evidence presented that justified the termination of Ms. Hamilton's contract with the Board. The Board rejected the referee's recommendation and unanimously voted to terminate the employment contract of Hamilton. See, Board Resolution, September 26, 2005, Resolution 9-05-05.
 {¶ 13} Hamilton then filed a complaint in the Common Pleas Court alleging that the Board wrongfully terminated her. She also alleged that the Board and Judith Saylor had slandered her. Prior to trial, Hamilton withdrew her slander claim and the matter was submitted on the record and briefs. The trial court found that applying the standards of R.C. 3319.16, good and just cause existed for the termination of Ms. Hamilton by the Board.
 {¶ 14} The court found that Ms. Hamilton had clearly failed to meet the requirements to renew the temporary license under which she had taught during the 2003-2004 school year and her temporary license expired on June 30, 2004. The court noted that an educational service center cannot employ a teacher who does not have proper certification, citing R.C. 3319.30. The court noted that Ms. Hamilton argued that she could have been certified to teach in the 2004-2005 school year pursuant to R.C. 3319.227. The court noted that Ms. Hamilton did not raise this alternative until she had been informed by the Superintendent that she would have to resign or be terminated. The court noted that Ms. Hamilton testified she was entitled to the alternative license *Page 7 
upon the recommendation of Superintendent Judy Saylor because she had a teaching certificate K through 12 in health education.
 {¶ 15} The court found that Ms. Hamilton had failed to demonstrate that she qualified for the Alternate Educator License. Further, the court found that the Board was not obligated to pursue the alternative Ms. Hamilton suggested after she failed to meet the normal requirements provided in her temporary certificate. The court noted that Superintendent Saylor provided uncontradicted testimony that use of the alternative license pursuant to H.B. 196 codified as R.C. 3319.227 was entirely within her discretion. The trial court found the Board was not obligated to use R.C. 3319.227 for Ms. Hamilton's benefit. Finally, the court found that the Board's decision to terminate Ms. Hamilton for her failure to acquire the proper certification as an intervention specialist for the 2004-2005 school year constituted good and just cause for termination of her contract pursuant to R.C. 3319.16.
 {¶ 16} Ms. Hamilton has not designated a specific assignment of error in this appeal, but she argues the trial court erred in finding that the Board had properly terminated her for good and just cause. She argues she was hired in April 2004 without qualification for the specific role she had performed in two prior years. She argues she was replaced by an unqualified teacher at a substantial savings to the Board and the same procedure to qualify her replacement could have been offered to her. The Board argues that "good and just cause" for termination is satisfied when a teacher fails to maintain or obtain the appropriate licensure required for the position to which the teacher is assigned.
 {¶ 17} R.C. 3319.02, under the chapter governing "Schools-Superintendent; *Page 8 
Teachers; Employees," provides that the contracts of assistant superintendents, as well as other administrators, may not be terminated except pursuant to R.C. 3319.16. That statute provides that the contract of any teacher may be terminated only for "gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause." For conduct to be considered "immoral," the conduct must be hostile to the school community and not a private act which has no impact on the teacher's professional duties. Bertolini v. Whitehall CitySchool Dist. Bd. Of Edn. (2000), 139 Ohio App.3d 595, 744 N.E.2d 1245. Further, it is understood that "other good and just cause" must involve a "fairly serious matter." Hale v. Bd. of Edn. City of Lancaster (1968),13 Ohio St.2d 92, 98-99, 234 N.E.2d 583.
 {¶ 18} The decision to terminate a teacher's contract is comprised of two parts: (a) the factual basis for the allegations giving rise to the termination; and (2) the judgment as to whether the facts, as found, constitute gross inefficiency, immorality, or good cause as defined by statute. Aldridge v. Huntington School Dist. Bd. of Edn. (1988),38 Ohio St.3d 154, 157, 527, N.E.2d 291. The primary duty of the referee in a contract termination dispute under R.C. 3319.16 is to ascertain the facts, while the school board's primary duty is to interpret the significance of the facts. Bertolini at 603, 744 N.E.2d 1245.
 {¶ 19} When a contract termination proceeding is conducted by a referee pursuant to R.C. 3319.16, a board of education must accept the referee's finding of fact unless they are against the greater weight, or preponderance, of the evidence. Aldridge at paragraph one of the syllabus. As to the referee's recommendation based on those findings, the school board has the discretion to accept or reject the recommendation *Page 9 
unless such acceptance or rejection is contrary to law. Id. at paragraph two of the syllabus. However, both the findings and recommendations of the referee are accorded due deference because it is the referee who is best able to observe the demeanor and credibility of the witnesses.Katz v. Maple Heights City School Dist. Bd. of Edn. (1993),87 Ohio App.3d 256, 260, 622 N.E.2d 1.
 {¶ 20} "Although the common pleas court's review of a board's decision is not de novo, R.C. 3319.16 empowers the court to weigh the evidence, hold additional hearings if necessary, and to render factual determinations." Id. However, "a common pleas court's scope of review is more limited under R.C. Chapter 3319 appeals than in standard administrative appeals under R.C. Chapters 2505 and 2506."Sturdivant v. Toledo Bd. Of Edn., 157 Ohio App.3d 401, 811 N.E.2d 581,2004-Ohio-2878 (differentiating standards of review with regard to rights of limited-contract teachers under R.C. 3319.11). A common pleas court may reverse a board's order of termination only where it finds that the order is not supported by or is against the weight of the evidence. Katz at 260, 622 N.E.2d 1, citing Hale. However, "absent a claim that the school board violated a statutory right or constitutional obligation, a trial court may not substitute its judgment for that of the board." Bertolini at 604, 744 N.E.2d 1245. "If substantial and credible evidence is presented to support the charges of the board, and a fair administrative hearing is had, the [common pleas court] court cannot substitute its judgment for the judgment of the administrative authorities." Id., quoting Strohm v. Reynoldsburg City School Dist. Bd.Of Edn. (Mar. 31, 1998), Franklin App. No. 97APE07-972.
 {¶ 21} The scope of review by an appellate court is limited to whether the *Page 10 
common pleas court, in its review of the board's decision, abused its discretion. Katz at 261, 622 N.E.2d 1. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id., citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Absent an abuse of discretion, this court may not substitute its judgment for the judgment of the common pleas court. Id.
 {¶ 22} Appellant concedes that her contract with the Board of the Educational Service Center could be terminated if she was not properly certified to teach the students she would have been teaching in the 2004-2005 school year. Case law supports that proposition. See State v.Antram (February 16, 1993), Madison App. CA-92-08-0021. Appellant also concedes that the superintendent had discretion to continue to employ her for up to two years in a teaching area for which her present license or certificate was not valid as long as the individual will enroll in, attend, and complete the necessary coursework required. Appellant also does not dispute that she received a notice from the superintendent in November 2003 notifying her that her temporary certificate would expire on June 30, 2004, and it was her responsibility to complete any coursework necessary to renew her license.
 {¶ 23} Appellant had been teaching for the Board since October 2002 pursuant to a substitute license in 2002, a temporary license in 2003, and now in the summer of 2004, she had yet to complete the necessary six hours of college credit to obtain her license. The superintendent was not required to continue to employ Hamilton under the provisions of R.C. 3319, 22 when Hamilton had demonstrated no progress toward completing the coursework required. *Page 11 
 {¶ 24} We cannot say that the trial court abused its discretion in finding that the Board had terminated Hamilton for good cause. The judgment of the trial court is Affirmed.
DONOVAN, P.J., and FAIN, J., concur.
Copies mailed to:
Ronald C. Tompkins Richard W. Ross Nicole M. Donovsky Hon. Roger B. Wilson *Page 1