**[Cite as *Stepp v. Medina City School Dist. Bd. of Edn.*, 2016-Ohio-5875.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

RANDOLPH S. STEPP

    Appellee

    v.

MEDINA CITY SCHOOL DISTRICT
BOARD OF EDUCATION, et al.

    Appellants

C.A. Nos.     15CA0071-M
                15CA0073-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     14 CV 0874

DECISION AND JOURNAL ENTRY

Dated: September 19, 2016

---

SCHAFER, Judge.

**{¶1}** Defendants-Appellants, Karla Robinson, Susan Vlcek, William Grenfell, and Charles Freeman (collectively, "Board Members"), appeal the judgment of the Medina County Court of Common Pleas denying their collective motion for summary judgment on Plaintiff-Appellee, Randolph Stepp's, claims for breach of contract, defamation, and false light invasion of privacy. Defendant-Appellant, James Shields, also appeals the judgment of the Medina County Court of Common Pleas denying his separate motion for summary judgment on Stepp's tort claims. For the reasons set forth below, we affirm.

I.

**{¶2}** The Medina City Schools Board of Education ("the Board") and Stepp entered into a three-year contract in 2006 to make Stepp the school district's superintendent. At the expiration of this initial contract in 2009, the Board elected to retain Stepp as superintendent and the parties entered into a new five-year contract. Under the terms of the new contract, Stepp was

to receive an annual base salary with benefits. Stepp had the potential to earn annual raises and merit bonuses under the new contract. The Board also agreed to pay Stepp $10,000.00 annually ($50,000.00 for the duration of the contract) to discourage him from accepting other job offers. Lastly, the Board explicitly encouraged Stepp to continue with his professional growth and development. To advance this last objective, the Board included a provision within the new contract agreeing to "reimburse [Stepp] for any college coursework completed for the purpose of expanding his professional knowledge and skills or to keep his license current, including tuition, fees, books and any other classroom materials required by the institution providing the services."

{¶3} After the Board and Stepp entered into the new five-year contract, Stepp voluntarily forwent receiving any raises and merit bonuses at first. However, Stepp eventually approached Susan Vlcek, the president of the school board, in 2011 and discussed amending his contract to include a provision whereby the school district would pay the costs of his education. Specifically, Stepp proposed that the school district pay a sum of $30,000.00 annually for five years to cover the costs of his education and that these payments be disbursed from the Medina County Educational Service Center (ESC)[1] rather than the school district treasurer, James Hudson. Stepp and Vlcek exchanged correspondence regarding this topic, with some of the correspondence being sent to James Shields, the school district's director of human relations and legal in-house counsel.

---

[1] Most Medina County school districts contract with the ESC to provide services to schools. The school districts that contract with the ESC prepare an annual budget with the ESC, which must be approved by the district's school board. Any money paid to the ESC that goes unspent results in a surplus of school district funds accumulating with the ESC. All surplus funds belong to the school district and the school district can direct the ESC how to spend this money. The unspent money can also be either withdrawn or returned to the school district if requested. As of early 2012, no formal documentation was required prior to the ESC disbursing requested funds.

{¶4} In September 2011, Stepp sent a proposed amended contract to Vlcek. This amended contract was identical to the 2009 contract but for the addition of the following provision: "The board also agrees to pay the costs associated with [Stepp's] acquisition of past academic degrees as they relate to education." The Board voted to accept the proposed amended contract on November 7, 2011, without any changes. Thus, on January 9, 2012, Stepp received a check payable to the U.S. Department of Education from the ESC in the amount of $172,011.00, which fully paid all of Stepp's student loans.[2] The Board Members and Shields assert that the added provision to the amended contract was intended to reimburse Stepp for costs associated with obtaining any degree during his tenure as superintendent, not for degrees that pre-dated his tenure as superintendent. Thus, the Board Members and Shields maintain that they believed that the 2011 amended contract was only intended to cover the costs Stepp incurred to obtain his doctorate degree from Ashland University in 2010 and his M.B.A. from Case Western Reserve University.[3] The Board Members and Shields also claim that they did not learn about the ESC's $172,011.00 payment to the U.S. Department of Education until March of 2013.

{¶5} In the fall of 2012, prior to when the Board Members allege that they learned about the ESC's $172,011.00 disbursement, Stepp and the school board began discussing a new contract to retain Stepp as the school district's superintendent. Stepp proposed a new contract

---

[2] This disbursement paid for up to 15 years worth of Stepp's student loans. Specifically, this payment covered the costs affiliated with Stepp obtaining his undergraduate degree in education from Ashland University in 1993, his master's degree in education administration from Ashland University in 1998, and his doctorate degree in educational leadership from Ashland University in 2010. This payment also encompassed loans that Stepp acquired to attend the University of Akron for one year in 1983 and Ohio State University from 1984 to 1988 and again in 1992.

[3] Stepp was admitted to the Case Western Reserve University Weatherhead School of Management in 2010. He graduated with his M.B.A. in 2012, after the Board had already approved the 2011 amended contract.

that amended the 2009 contract for the remainder of its duration and also included a new five-year term. The proposed contract was primarily based off of his 2009 contract and also contained a bonus provision that was intended to discourage Stepp from accepting other job offers. However, instead of the $50,000.00 bonus provision that was contained in the 2009 contract, the proposed 2013 contract contained a provision drafted by Stepp whereby his bonus was to be determined using a formula that was dependent on the number of his accumulated sick days. The proposed contract also reimbursed Stepp for an unstated amount of income taxes that he would have to pay on the educational reimbursement. The Board met in executive session on January 7, 2013, to discuss Stepp's contract proposal. Regarding the contract's bonus provision, Stepp represented to the Board during this meeting that his bonus was worth between $50,000.00 and $60,000.00. The Board unanimously approved Stepp's new contract that evening.

{¶6} On March 6, 2013, the Board met again and discovered that Stepp's 2013 contract bonus was actually worth $83,017.06 and had already been paid to him. The Board also purportedly first learned at this meeting about the ESC's $172,011.00 payment covering all of Stepp's student loans dating back to 1983. This information purportedly shocked the Board Members. This information also quickly became public knowledge and caused a major outcry from the community. The Board subsequently held numerous meetings with the general public to discuss Stepp's compensation.

{¶7} In March of 2013, a local newspaper sent a list of questions to the Board regarding Stepp's compensation. The Board subsequently issued a press release on March 22, 2013, wherein they provided answers to the newspaper's questions. Around this time, Shields made numerous statements to the Board, the teacher's union, and the school district's director of community relations denying any knowledge that the 2011 contract amendment was intended to

have the school district pay for all of Stepp's past academic degrees. Stepp maintains that the Board's press release and Shields' comments included false and defamatory statements about him.

{¶8} As time passed, Stepp faced mounting pressure from the public and from individual Board members to resign his post as superintendent. The Board asked the school district's treasurer and the state auditor's office to separately investigate Stepp's use of school district funds. On April 8, 2013, the Board placed Stepp on paid administrative leave pending the results of the state auditor's investigation. The following week, the Board determined that they had violated Ohio's Open Meeting Act when they approved Stepp's 2013 contract. As such, the Board adopted a resolution rescinding the 2013 contract. The school district's treasurer, acting at the behest of the Board, then informed Stepp that his paychecks would be adjusted prospectively to recover amounts already paid to him under the 2013 contract. The treasurer also demanded that Stepp return the $83,017.06 bonus that was paid to him under the 2013 contract. In early October 2013, the Board adopted a resolution to not renew Stepp's 2009 contract when it expired on July 31, 2014.

{¶9} On October 22, 2013, the state auditor issued an interim report detailing $4,121.00 worth of inappropriate expenditures that Stepp had made during his tenure using ESC surplus funds that belonged to the school district. This report also determined that Stepp's use of ESC funds for certain non-service purposes violated the school district's purchasing rules. On October 28, 2013, the Board held a *Loudermill* hearing and passed a resolution to begin formal termination proceedings against Stepp. However, Stepp filed a federal lawsuit against the school district in November 2013 and the district court stayed the *Loudermill* hearing process. The district court did not lift the stay of the administrative process until April 17, 2014. In April

2014, the Board approved a contract making the school district's interim superintendent the new permanent superintendent. Stepp officially resigned from his position as superintendent of Medina City School District on April 25, 2014.

{¶10} Stepp filed a lawsuit against the Board Members and Shields on August 20, 2014, in the Medina County Court of Common Pleas[4] asserting the following claims: (1) breach of contract against the Board Members with regard to the 2011 amended contract and the 2013 contract; (2) breach of contract against the Board Members by effectively and/or constructively discharging him; (3) defamation against the Board Members[5] for the March 22, 2013 press release responding to the newspaper's written questions; (4) defamation against Shields for certain public statements that he made to the Board, the teacher's union, and the Director of Community Relations concerning the ECS's $172,011.00 payment covering Stepp's student loans; (5) false light invasion of privacy against the Board for the March 22, 2013 press release; (6) false light invasion of privacy against Shields for his public comments to the Board, the teacher's union, and the Director of Community Relations; and (7) a request for injunctive relief requiring the Board to correct the minutes from the January 7, 2013 meeting to reflect that the Board entered into executive session for one or more of the permissible purposes under R.C. 121.22(G).

{¶11} The Board Members and Shields both denied the allegations contained in Stepp's complaint. The Board Members' answer listed several affirmative defenses. The Board

---

[4] Stepp initially filed a lawsuit against the Board Members and Shields, among others, in the United States District Court for the Northern District of Ohio. However, the district court dismissed Stepp's state law claims without prejudice. Stepp then filed the present lawsuit in state court.

[5] Stepp voluntarily dismissed Claim III (defamation) of his complaint as it pertained to board member Charles Freeman.

Members also filed a counterclaim asserting three causes of action against Stepp. The first cause of action concerns Stepp's refusal to return the $83,017.06 bonus that he received under the 2013 contract. The second cause of action concerns two payments that the ESC issued at the direction of Stepp, which were the $172,011.00 payment covering Stepp's student loans and $4,121.00 worth of payments that the state auditor's interim report deemed to be improper. The third cause of action asserts that Stepp violated his duty of good faith and fair dealing by not returning his 2013 bonus and by improperly directing the ESC to make payments for his benefit. Stepp filed an answer denying the Board Members' counterclaim.

{¶12} At the close of discovery, the Board Members and Shields filed separate motions for summary judgment on Stepp's claims. Stepp filed briefs opposing both defendants' motions for summary judgment. Stepp then filed a motion for partial summary judgment on the Board Members' affirmative defense to his breach of contract claims where the Board Members assert that Stepp's 2013 employment contract is invalid because the Board violated Ohio's Open Meetings Act when it approved the contract. Stepp also filed a motion for summary judgment on the Board Members' counterclaim. The Board Members filed briefs in opposition to Stepp's motions for summary judgment.

{¶13} On August 13, 2015, the trial court issued a judgment entry ruling on the parties' respective summary judgment motions. In its entry, the trial court denied the Board Members and Shields' respective motions for summary judgment in their entirety. The trial court also denied Stepp's motion for summary judgment with regard to the Board Members' counterclaim, but granted Stepp's motion for summary judgment with regard to the Board Members' Open Meetings Act affirmative defense.

{¶14} The Board Members and Shields both timely appealed from the trial court's denial of their respective summary judgment motions and this Court subsequently consolidated the appeals. Stepp has not appealed the trial court's judgment. The trial court has stayed the proceeding pending the outcome of this appeal. The Board Members have raised four assignments of error for our review while Shields has raised one. To facilitate our analysis, we elect to address Appellants' assignments of error out of order.

II.

### The Board Members' Fourth Assignment of Error

**The trial court did not have subject matter jurisdiction over the constructive termination claim.**

{¶15} In their fourth assignment of error, the Board Members argue that the trial court lacked jurisdiction over Stepp's breach of contract claims because Stepp resigned from his position without exhausting his administrative appeal remedies as required by R.C. 3319.16. We disagree.

{¶16} R.C. 3319.01 states that "[t]ermination of a superintendent's contract shall be made pursuant to [R.C. 3319.16]." R.C. 3319.16 provides teachers and superintendents with an administrative appeal procedure to address the termination of their contract. When a school board commences termination proceedings against a teacher or superintendent, the teacher or superintendent may request a hearing before the school board or before an appointed referee. R.C. 3319.16; R.C. 3319.161. A teacher or superintendent whose contract has been terminated pursuant to this process may appeal the decision through an original action before the court of common pleas. R.C. 3319.16.

{¶17} R.C. 3319.16 provides the exclusive rights and remedies for a teacher or superintendent facing termination of his or her employment contract. *Elsass v. St. Marys City*

*School Dist. Bd. of Edn.*, 3d Dist. Auglaize No. 2-10-30, 2011-Ohio-1870, ¶ 66. The Supreme Court of Ohio has stated that "[w]here the General Assembly by statute creates a new right and at the same time prescribes remedies or penalties for its violation, the courts may not intervene and create an additional remedy." *Id*., citing *State ex rel. Ohio Democratic Party v. Blackwell,* 111 Ohio St.3d 246, 2006–Ohio–5202, ¶ 34, quoting *Fletcher v. Coney Island Inc.*, 165 Ohio St. 150, 154 (1956). Thus, R.C. 3319.16 provides the sole process by which teachers and superintendents may challenge their termination.

{¶18} Here, the Board Members contend that the trial court did not have subject matter jurisdiction over Stepp's breach of contract claim because Stepp resigned without fully undergoing the process set forth R.C. 3319.16. Thus, the Board Members assert that because Stepp did not exhaust his administrative remedies, he was barred from filing his breach of contract claims in the present lawsuit. We note, however, that the Board Members did not raise this argument below. The Supreme Court of Ohio has held that "the doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained." *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 462 (1997), citing *Gannon v. Perk*, 46 Ohio St.2d 301 (1976). Because the Board Members are the party seeking to benefit from the doctrine of failure to exhaust administrative remedies, it was their responsibility to raise this argument in the trial court. *Id*. Having failed to do so, we determine that the Board Members have forfeited this issue for appellate review. *See New Franklin v. Hutfles*, 9th Dist. Summit No. 27098, 2014-Ohio-1335, ¶ 6 (failure to timely raise the doctrine of failure to exhaust administrative remedies affirmative defense waives appellant's ability to raise the defense on appeal.).

{¶19} The Board Members' fourth assignment of error is overruled.

**The Board Members' Second Assignment of Error**

**The trial court erred in denying immunity to the individual board member defendants.**

{¶20} In their second assignment of error, the Board Members argue that the trial court erred by denying their motion for summary judgment on Stepp's tort claims because they are entitled to immunity as employees of a political subdivision. We disagree.

## A. Jurisdiction

{¶21} "The denial of a motion for summary judgment is not ordinarily a final, appealable order." *Buck v. Reminderville,* 9th Dist. Summit No. 27002, 2014–Ohio–1389, ¶ 5. However, R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." In the present case, the Board Members maintain, and Stepp does not dispute, that they qualify as a political subdivision and an employee of a political subdivision, respectively. Thus, because the trial court's judgment denied the Board Members the benefit of R.C. Chapter 2744 statutory immunity, the judgment is a final, appealable order.

## B. Standard of Review

{¶22} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). Summary judgment is only appropriate where (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. Civ.R. 56(C). Before making such a contrary finding, however, a court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶23} Summary judgment consists of a burden-shifting framework. To prevail on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 449 (1996).

### C. Immunity of Political Subdivision Employees

{¶24} R.C. 2744.03(A)(6) provides immunity for employees of political subdivisions, and it pertinently provides as follows:

> In a civil action brought against * * * an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, * * * the employee is immune from liability unless one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

Here, the parties do not dispute that the Board Members are employees of a political subdivision. *See* R.C. 2744.03(A); R.C. 2744.01(B). Moreover, the Board Members maintain that they were acting within the scope of their employment, and thus, R.C. 2744.03(A)(6)(a) does not apply.

They further maintain that R.C. 2744.03(A)(6)(c) does not apply because there is no section of the Ohio Revised Code that expressly imposes liability on them. Stepp does not dispute these claims. Rather, the dispute in this case concerns whether the Board Members acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. *See* R.C. 2744.03(A)(6)(b).

{¶25} "One acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm." *Moss v. Lorain Cty. Bd. of Mental Retardation*, 185 Ohio App.3d 395, 2009-Ohio-6931, ¶ 19 (9th Dist.). "Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012–Ohio–5711, paragraph two of the syllabus. "The term 'bad faith' embraces more than bad judgment or negligence; it is conduct that involves a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." (Internal quotations and citations omitted.) *Thomas v. Bauschlinger*, 9th Dist. Summit No. 26485, 2013-Ohio-1164, ¶ 22. "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson* at paragraph three of the syllabus. Meanwhile, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus. "The actor must be conscious that his conduct will in all probability result in injury." *O'Toole v. Denihan,* 118 Ohio St.3d 374, 2008–Ohio–2574, paragraph three of the syllabus. There must be a "perverse disregard of a known risk." *Id*.

{¶26} In this case, Stepp's defamation and false light invasion of privacy claims against the individual Board Members concern the March 22, 2013 press release that the Board issued in response to written questions from the local newspaper. In response to specific questions, the press release contained the following language which form the basis of Stepp's tort claims:

(1) "The Board was not aware of the extent of the reimbursement or that it applied to all [past] degrees."

(2) "The past procedure for reimbursement was such that the Board was not informed of the payments/contracts between the Board and the Medina County Educational Service Center (ESC)."

(3) "The Board learned of [the ESC's $172,011.00] expenditure on March 6, 2013, as the result of the public records request."

Stepp asserts that the language of the press release insinuates that he lied, concealed information, or misled the Board concerning the total cost of his degrees, the number of degrees for which he would obtain reimbursement under the 2011 contract amendment, and that he obtained reimbursement through the ESC to avoid detection due to the Board's lack of oversight of ESC contracts or payments. At the close of discovery, the Board Members filed a motion for summary judgment arguing, in part, that they are entitled to immunity as employees of a political subdivision. Stepp filed a motion opposing the Board Members' request for summary judgment. The trial court ultimately denied the Board Members' summary judgment motion, concluding that a question of material fact exists regarding whether the Board Members acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶27} In their motion for summary judgment, the Board Members assert that they did not act with a malicious purpose, in bad faith, or in a wanton or reckless manner. In support of their motion for summary judgment, the Board Members rely solely upon Stepp's deposition testimony where Stepp could not say that the Board Members possessed sinister motives and

where Stepp admitted that he never heard the Board Members say anything disparaging to him, that the Board Members never yelled at him, and that the Board Members never exhibited any hatred towards him.

{¶28} After reviewing the record in this matter, we conclude that the Board Members failed to carry their initial *Dresher* burden. The only evidence cited within the Board Members' motion for summary judgment as it pertains to the issue of immunity is Stepp's deposition testimony where Stepp comments on how the Board Members personally treated him during his tenure as superintendent. Stepp's testimony on this point, however, has absolutely no bearing on either intent or the level of knowledge that the individual Board Members possessed when they signed off on the press release. Additionally, we conclude that the Board Members' conclusory assertion that their request for the state auditor to investigate Stepp's past expenses was not evidence of malice is insufficient for a moving party to discharge its initial burden on summary judgment. *See Dresher v. Burt*, 75 Ohio St.3d at 293. As such, we determine that the trial court did not err by denying the Board Members' motion for summary judgment.

{¶29} The Board Members' second assignment of error is overruled.

### Shields' Assignment of Error

**The trial court committed prejudicial error when it denied Mr. Shields – a political subdivision employee – full, statutory immunity pursuant to Ohio Revised Code Chapter 2744 from Randolph Stepp's defamation and false light invasion of privacy claims where no evidence supports a finding of actual malice by Mr. Shields.**

{¶30} Here, Stepp's defamation and false light invasion of privacy claims against Shields concern Shields' March 2013 statements that were made to various people, such as the Board, the teacher's union, the school district treasurer, and the school district community relations director. As with Stepp's claims against the Board Members, the sole issue here

concerns whether Shields acted with a malicious purpose, in bad faith, or in a wanton or reckless manner when he made the statements in question. *See* R.C. 2744.03(A)(6)(b). The crux of Shields' statements that Stepp claims to be injurious to him are: (1) Shields denying any involvement with the 2011 amended contract; (2) Shields claiming that he thought that the 2011 contract amendment was only intended to reimburse Stepp for his M.B.A., not his past degrees; and (3) Shields insisting that he did not know that the 2011 contract amendment would cost upwards of $175,000.00. At the close of discovery, Shields filed a motion for summary judgment arguing, in part, that he is entitled to immunity as an employee of a political subdivision. Stepp filed a brief in opposition. The trial court ultimately denied Shields' motion on the basis that Stepp submitted evidence which, if believed, "would cause reasonable minds to differ" on whether Shields acted maliciously.

{¶31} After reviewing the record and applying the aforementioned summary judgment standard, we determine that Shields satisfied his initial *Dresher* burden. In his motion for summary judgment, Shields asserts that no genuine issue of material fact exists concerning whether he acted with a malicious purpose, in bad faith, or in a wanton or reckless manner when he addressed the Board Members, the teacher's union, and the director of community relations in March 2013 regarding Stepp's 2011 amended contract. In support of his motion for summary judgment, Shields cites to the deposition transcripts of board members Freeman and Grenfell, board president Vlcek, school district treasurer Hudson, and school district communications director Jeanne Hurt to support his assertion that he was not aware of the extent to which the school district would reimburse Stepp for his past academic degrees under the terms of the 2011 contract amendment prior to March of 2013. Additionally, Shields' motion cites to the affidavit

of John Leatherman, the president of the Medina City Teacher's Association, which attests to the following:

> Based upon [Shields'] verbal and non-verbal response and demeanor during [their February and March 2013] meetings, it was clear to me that until [the March 2013 board meeting] Shields was completely unaware of certain matter pertaining to [Stepp's 2011 amended contract], specifically:
>
> i. that Stepp's Contract provided for the payment or reimbursement to Stepp for educational loans and expenses as far back as Stepp's undergraduate degrees;
>
> ii. that payment to Stepp under the terms of his Contract would be as high as $175,000; and
>
> iii. that the Contract's payment or reimbursement provision applied to any degree other than Stepp's M.B.A. which was being pursued at Case Western Reserve University at the time of the Contract.

Shields contends that this evidence demonstrates that his various statements in March 2013 regarding the 2011 amended contract were not made with a malicious purpose, in bad faith, or in a wanton or reckless manner. We agree that the evidence cited in Shields' motion for summary judgment negates Stepp's contention that Shields' March 2013 comments to the Board, the school district treasurer, the teacher's union, and the school district's communications director concerning the 2011 amended contract were made with malice, in bad faith, or in a wanton or reckless manner. As such, we conclude that Shields has satisfied his initial burden on summary judgment.

{¶32} With Shields having satisfied his initial burden, the burden then shifts to Stepp as the non-moving party to provide specific facts which would demonstrate the existence of a "genuine triable issue" to be litigated for trial. *Tompkins,* 75 Ohio St.3d at 449. In his brief in opposition to Shields' summary judgment motion, Stepp asserts that Shields acted with malice when discussing the 2011 contract amendment with the Board, the teacher's union, the school

district treasurer, and the school district community relations director. In support of this assertion, Stepp cites to record evidence concerning Shields' direct involvement in both negotiating and drafting the 2011 contract amendment. Specifically, Stepp cites to his own deposition testimony concerning his communications with Shields while negotiating the 2011 contract amendment, as well as his own handwritten notes taken contemporaneously during those negotiations. Stepp also cites to the 2011 contract amendment itself in support of his claim that Shields acted with malice. Specifically, Stepp claims that because Shields drafted the 2011 contract amendment, Shields' statements to the Board, the teacher's union, the school district treasurer, and the school district community relations director were both false and made with the intent of causing harm to him.

{¶33} Additionally, Stepp argues in his opposition brief that even if Shields "did not have actual knowledge that his statements were false, he certainly had a high degree of awareness of their probable falsity or serious doubts as to the truth of [his] statements[.]" On this point, Stepp appears to be arguing that Shields made the March 2013 statements in question in a reckless manner. In support of this assertion, Stepp cites to Shields' own deposition testimony. Specifically, Stepp cites to the testimony where Shields admits: (1) that the language of the 2011 amended contract refers to "past *degrees*" (plural); (2) that Stepp had not obtained his M.B.A. at the time that the Board approved the 2011 amended contract and, thus, Stepp's M.B.A. did not constitute a "past academic degree" at that point in time; (3) that he was aware of Stepp's past academic degrees; (4) that Stepp expressly listed all three of his previously earned academic degrees in an August 4, 2011 email concerning the 2011 amended contract that was emailed to both Vlcek and himself; and (5) that he prepared the actual language of the 2011 amended contract based upon his prior discussions with Stepp and Vlcek.

**{¶34}** In light of the foregoing, we conclude that Stepp met his reciprocal burden of demonstrating the existence of a genuine issue of material fact concerning whether Shields acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. The trial court therefore did not err in denying Shields' motion for summary judgment as a genuine issue of material fact exists as to whether Shields is entitled to immunity.

**{¶35}** Accordingly, Shields' sole assignment of error is overruled.

### The Board Members' First Assignment of Error

**The trial court erred in failing to consider the finalized State Auditor's Opinion as admissible evidence.**

**{¶36}** In their first assignment of error, the Board Members argue that the trial court erred by denying their motion to substitute the state auditor's interim report with the state auditor's final report. We decline to address the merits of the Board Members' argument, however, as we determine that their argument was not properly preserved for appellate review.

**{¶37}** "Generally, the denial of summary judgment is not a final, appealable order." *Hubbell v. City of Xenia,* 115 Ohio St.3d 77, 2007–Ohio–4839, ¶ 9. "[If] a trial court denies a motion in which a political subdivision * * * seeks immunity," however, its "order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Id.* at syllabus. This Court has held that "an appeal from such a decision is limited to the review of alleged errors in the portion of the trial court's decision which denied the political subdivision the benefit of immunity." *Makowski v. Kohler,* 9th Dist. Summit No. 25219, 2011–Ohio–2382, ¶ 7, citing *Essman v. City of Portsmouth,* 4th Dist. Scioto No. 08CA3244, 2009–Ohio–3367, ¶ 10; *Carter v. Complete Gen. Constr. Co.,* 10th Dist. Franklin No. 08AP–309, 2008–Ohio–6308, ¶ 8; *CAC Bldg. Props. v. City of Cleveland,* 8th Dist. Cuyahoga No. 91991, 2009–Ohio–1786, ¶ 9 fn. 1.

**{¶38}** Here, the parties all filed their respective motions for summary judgment on April 16, 2015. The state auditor issued its final report on April 21, 2015. While the parties' summary judgment motions were still pending, the Board Members filed a motion on May 4, 2015, asking the trial court to substitute the state auditor's October 22, 2013 interim report with the final report. The final report is similar in substance to the interim report except that it contains an addendum which discusses the auditor's findings regarding the ESC's $172,011.00 payment covering all of Stepp's student loans. Stepp did not oppose the Board Members' motion to substitute. However, the trial court never ruled on the Board Members' motion prior to issuing its judgment entry ruling on the parties' respective motions for summary judgment wherein it denied the Board Members' request for immunity. As such, because the trial court did not explicitly rule on the Board Members' motion, this Court must presume that the trial court implicitly denied this motion. *Koballa v. Twinsburg Youth Softball League*, 9th Dist. Summit No. 23100, 2006-Ohio-4872, ¶ 17, citing *Akron v. Molyneaux*, 144 Ohio App.3d 421, 425 (2001).

**{¶39}** Although the Board Members argue on appeal that the auditor's final report "goes to the heart of the immunity issue" and is relevant to negating Stepp's defamation claim, they did not make these arguments in their motion. The Board Members' motion merely asks the trial court to substitute the interim report with the final report while omitting any discussion or argument as to why the final report is integral to their defense. By not providing the trial court with this argument, the Board Members cannot now argue on appeal that the final report is crucial to their immunity affirmative defense. As such, we decline to address the Board Members' first assignment of error.

**{¶40}** The Board Members' first assignment of error is overruled.

**The Board Members' Third Assignment of Error**

**Because there was no malice, bad faith, reckless or wanton behavior, there is no actual malice necessary to sustain Plaintiff's defamation and invasion of privacy claims.**

**{¶41}** In their third assignment of error, the Board Members argue that if they are entitled to immunity, then they are also entitled to summary judgment on Stepp's tort claims. As noted earlier in this opinion, however, we affirm the trial court's denial of the Board Members' request for immunity in their summary judgment motion and overrule their second assignment of error. Additionally, since this assignment of error pertains to the merits of Stepp's tort claims, it is beyond the scope of our review at this juncture. *Makowski*, 2011–Ohio–2382, at ¶ 7. Accordingly, we decline to address the Board Members' third assignment of error as we are without authority to do so.

**{¶42}** Therefore, the Board Members' third assignment of error is overruled.

III.

**{¶43}** The Board Members' and Shields' assignments of error are overruled. Accordingly, the judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

JONATHAN D. GREENBERG, ERIC J. JOHNSON, and SARA RAVAS COOPER, Attorneys at Law, for Appellant.

DAVID DRECHSLER and MICHAEL J. MATASICH, Attorneys at Law, for Appellee.